Artemis Spyridonidis, SBN 288611
Law Office of Artemis Spyridonidis
2366 Front Street
San Diego, CA 92101
Tel: (619) 246-6307
Email: artemis@artemislegal.com

Attorney for Defendant, Harry Segundo Segura-Valencia

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
**(HON. JUDGE CATHY ANN BENCIVENGO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HARRY SEGUNDO SEGURA-VALENCIA,<br><br>Defendant. | Crim. Case No.: 21-CR-3608-CAB-3<br><br>DEFENSE SENTENCING MEMORANDUM<br><br>Date: May 4, 2023<br>Time: 9:30 a.m. |

TO: RANDY GROSSMAN, UNITED STATES ATTORNEY
ALLISON BLAIR MURRAY, ASSISTANT UNITED STATES ATTORNEY
JENNY M. TYSON, UNITED STATES PROBATION OFFICER

## I. INTRODUCTION

Harry Segundo Segura Valencia ("Mr. Segura") entered a guilty plea to Count 2 of a two-count indictment, which charged him with knowingly and intentionally possessing, with the intent to distribute, 5 kilograms or more of a substance containing a detectable amount of cocaine, in violation of United States Code, Title 46, §70503, and Title 18, United States Code, §2. ECF 71, at p. 2.

1

On December 17, 2021, Mr. Segura and others were apprehended aboard a vessel subject to the jurisdiction of the United States, and the vessel contained 5 kilograms or more of a substance containing a detectable amount of cocaine. ECF 71, at p. 3.

In the plea agreement, the parties agreed to jointly recommend the following guidelines:

1. Base Offense Level [§2D1.1(c)(1)]               38
2. Safety Valve [§2D1.1(b)(18)]                    -2
3. Acceptance of Responsibility [§3E1.1]           -3
4. Combination of Factors/Appeal Waiver [§5K3.1]   -4

                                    Total:    29, ECF 71 at p. 9

The government agrees to recommend a sentence that is either the greater of within the advisory guidelines as calculated by the government, or the applicable statutory mandatory minimum sentence if Mr. Segura does not qualify for Safety Valve. ECF 71, at p. 11. The defense may request additional departures or variance, as long as they are not related to his transportation or detention before the initial appearance in the Southern District of California. ECF 71, at p. 10.

As of May 4, 2023, the date of the sentencing hearing, Mr. Segura will have served 504 days, or sixteen months and 18 days, in custody.[1]

## II. FACTUAL BACKGROUND AND DISCUSSION

### A. Personal History

Mr. Segura was born and raised in San Juan de Tumaco, Narino, Colombia, and is one of nine siblings. PSR ¶ 38. The last year of schooling he completed was seventh grade. PSR ¶ 47. Throughout his childhood, he and his siblings worked on his father's farm. When he was 10 years-old, his parents separated and divided the minor children between them. PSR ¶ 39. As a result, he went to live with his father, and is only close with Yolima Valencia, the sister with whom he was raised. PSR at ¶¶ 38, 39. Ms. Valencia has been supportive of him throughout his case; however, she was unable to draft a letter of support. Despite his parents' separation, he maintained contact with his mother until her passing, and states that his childhood was happy, although the family had a "humble living." PSR ¶ 40.

Mr. Segura now has three adult children with whom he enjoys a positive relationship. PSR ¶ 40. He regrets that he missed 10 years of their lives while he was previously incarcerated, and he is grateful that their mother upheld a positive image of him in his absence. *Id.*

Prior to his arrest in this case, Mr. Segura was in a long-term relationship with Filomena Abadia Caisamo, and was self-employed for several years in HVAC. With his job, he was able to borrow a loan and purchase his home.

---

[1] The PSR, on page 1, relies on the incorrect arrest date of January 4, 2022, and states that Mr. Segura would have been in continuous federal custody for 431 days as of March 10, 2023. In fact, the correct arrest date is December 17, 2021, and he had served 449 days in custody as of March 10, 2023.

3

21-CR-3608-CAB-3

Mr. Segura resides in Buenaventura, Colombia's busiest port city[2], home to 400,000. It lies within the department (state) of Valle de Cauca. Because of its strategic position, gang-related violence fighting to control the port have led to Buenaventura being one of the most impoverished cities in Colombia.[3] The city has been marred by the Colombian Armed Conflict, drug trafficking, violence, guerrilla warfare, and paramilitary groups. *Id.* The Colombian government reports that the city has improved and the murder rate has lowered; however, community activists disagree and state there is no change in crime in Buenaventura. *Id.* Mr. Segura reports that a local gang "runs" the area where he lives, and taxes residents.

**B. The Offense**

Mr. Segura was kidnapped from his home and held alone for three days in an abandoned house. During this time, he was given only bread and water. He assumes that he was targeted because he spent time in the US, and because, through his work in refrigeration, he was able to purchase his own home. He believes that others assumed he had more money than he had. After being held for three days, he was threatened with death if he did not pay $30,000,000 Colombian pesos[4] within one month, and then

---

[2] Kugel, Seth. "Once Colombia's 'Deadliest City,' Buenaventura is Coming Back." New York Times, July 9, 2018. https://www.nytimes.com/2018/07/09/travel/buenaventura-colombia-pacific-coast.html

[3] Buenaventura, Valle de Cauca. Wikipedia, accessed 11/1/2022. https://en.wikipedia.org/wiki/Buenaventura,_Valle_del_Cauca

[4] $30,000,000 Colombian pesos are equal to $6446 United States dollars. Google.com, accessed 4/27/23.
https://www.google.com/search?q=convert+colombian+pesos+to+united+states+dollars&rlz=1C1VDKB_enUS1042US1042&sxsrf=APwXEdenmd8Bc6H9o6Tdp9-5JxOgPYIjnQ%3A1682655506886&ei=EkILZNbZNZyOwbkP8MG5kAg&ved=0ahUKEwjWqpGe3Mv-AhUcRzABHfBgGDoIQ4dUDCBA&uact=5&oq=convert+colombian+pesos+to+united+states+dollars&gs_lcp=Cgxnd3Mtd2l6LXNlcnAQAzIKCAAQgAQQRhCCAjIGCAAQFhAeMgYIABAWEB4yBggAEBYQHjIGCAAQFhAeMggIABAWEB4QCgIABCRCGAzIICAAQigUQhgMyCAgAEIoFEIYDOgQIIxAnOg0ILhCKBRDHARDRAxBDOggIABCKBRCRAjoICAAQgAQQsQM6DgguEIAEELEDEMcBENEDOhEILhCABBCxAxCDARDHARDRAzoHCAAQigUQQzoJCCMQJxBGEIICOgoIABCKBRCxAxBDOgsILhCABBDHARDRAzoICAAQgAQQyQM6CAgAEIAEEEMrkDOgsIABCABBCxAxCDARCABBBBBCxAxDJAzoOCC4QgAQQkgMxxwEQrwFKBAhBGABGABQAFjSQ2C1RGgBcAF4AIAB9AGIAYE6kgEGMC40Ni4ymAEAoAEBwAEB&sclient=gws-wiz-serp

4

21-CR-3608-CAB-3

he was released. However, based on his typical salary, it would take Mr. Segura approximately 10 years to earn this amount.

Hoping to raise money, Mr. Segura relocated to a nearby fishing village and began to fish. However, fishing is neither consistent nor lucrative. When he was offered a job as a mechanic overseeing the engine on a boat that was to deliver gasoline to a boat offshore, he agreed. But, when he arrived onsite and realized that it was drugs, and not gasoline, that he would be transporting, he felt that he could not refuse.

C. **Minor Role**

The defense respectfully requests a minor role adjustment. Mr. Segura had no knowledge of the full scope or structure of the trafficker's operations. He had no involvement in the planning, organizing, or decision-making of the attempted drug smuggling. Although he was responsible for the engine as the mechanic, he had no discretion in carrying out his own actions. His actions were limited to that of courier without discretion in performance, and he had no proprietary interest in the contraband. He was not given the responsibility of knowing in advance where he would be taking the drugs, except that they were going to Mexico. USSG §3B1.2 App. Note 3(C)(i)-(v); USSG§3B1.2, Application Note 3(A).

D. **Overrepresentation of Criminal History**

Mr. Segura was arrested on April 3, 2002, for the same offense. PSR ¶ 30. On May 2, 2003, he was sentenced by the United States District Court for the Middle District of Florida to serve 135 months. *Id.* He was subsequently released on January 27, 2012 after

serving 117 months and 25 days. *Id.* This date falls approximately nine years and ten months prior to his arrest in the present case on December 17, 2021.[5] Although the sentence itself was imposed 15 years prior to Mr. Segura's conduct in the present case, his sentence did extend into this fifteen-year period. United States Sentencing Guidelines §4A1.1(a), and its corresponding Application Note, provide that this falls within the parameters of a "prior sentence." However, given that the sentence was completed almost 10 years prior to the conduct in the present case, Mr. Segura respectfully requests a one-level reduction for overrepresentation of criminal history as provided in United States Sentencing Guidelines §4A1.3(b).

### III. CONCLUSION

For the reasons stated above, Mr. Segura respectfully requests that the Court find that a custodial sentence of 57 months is sufficient, but not greater than necessary, to meet the purposes of and factors relating to sentencing.

Dated: April 27, 2023                Respectfully submitted,

/s/ Artemis Spyridonidis
ARTEMIS SPYRIDONIDIS,
artemis@artemislegal.com
Attorney for Defendant,
Harry Segundo Segura-Valencia

---

[5] The PSR, at paragraph 4, states that the boat was intercepted on December 17, 2021. It later erroneously states at paragraph 10 that the defendants were arrested on January 4, 2022.